UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:25-CR-30074-ECS |
| Plaintiff, | |
| vs. | ORDER ON RESTITUTION |
| CALVIN HUNGER, | |
| Defendant. | |

Pending before the Court is the Government's request for restitution to be ordered against the Defendant, Calvin Hunger, in favor of the victim, Todd County, South Dakota for $34,348.75. Briefly stated, this case arises out of the Defendant's theft of a 2007 John Deere 772D road grader owned by Todd County on June 25, 2025. Defendant stole the road grader, drove it through a fence, and then drove it to various places on the Rosebud Reservation before crossing the southern boundary of the reservation and leaving it in Valentine, Nebraska.

Defendant pleaded guilty to Interstate Transportation of a Stolen Motor Vehicle in violation of 18 U.S.C. §§ 2312 and 3237 and was sentenced on February 23, 2026. At the sentencing hearing, the Court heard evidence from both parties as to the proper amount of restitution owed by the Defendant pursuant to the Mandatory Victims Restitution Act (MVRA). The Court was inclined to order the full restitution sought by the Government at the sentencing hearing ($34,348.75) but agreed to take the matter under advisement after defense counsel vigorously protested the soundness of that decision. The Court has now reviewed everything again, including applicable caselaw, and issues this ruling.

## A. Restitution Standard under the MVRA

"The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011) (citations omitted); 18 U.S.C. § 3664(e). "The purpose of the MVRA is 'to make victims of crimes whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" Frazier, 651 F.3d at 904 (8th Cir. 2011) (quoting United States v. Statman, 604 F.3d 529, 538 (8th Cir. 2010)). For this reason, the MVRA requires a sentencing court to "order . . . the defendant [to] make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). "Once the court has identified the victims, the next step is to determine 'the full amount of each victim's losses.'" Frazier, 651 F.3d at 903 (quoting 18 U.S.C. § 3664(f)(1)(A)). The government can satisfy its burden on the restitution issue by introducing a sworn statement or eliciting testimony "from the victim outlining the losses sustained as a result of the crime." United States v. Clausen, 949 F.3d 1076, 1081 (8th Cir. 2020) (quoting United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013)).

## B. Facts Pertaining to Restitution Claim

During the sentencing hearing, the Court heard testimony from Mr. Ronald Moran, the Highway Superintendent for Todd County, South Dakota. Mr. Moran testified that he was familiar with the 2007 John Deere 772D road grader at issue. Prior to its theft, it was functioning in an "excellent" fashion. It was used on the day it was stolen, and it worked fine. Mr. Moran also testified the road grader was not designed to be driven a long distance in eighth gear. Doing so causes the transmission and motor to "heat up."

Mr. Moran and some of his colleagues went to Valentine to pick up the road grader after it was discovered following the theft. One of Mr. Moran's colleagues drove the road grader onto a trailer whereupon it was towed back to Todd County's shop in Mission, South Dakota. He then

2

called RDO, a John Deere dealer in Rapid City, South Dakota, to ask for advice on what to do next. RDO advised Mr. Moran to run a "fluid test" to search for metal shavings in the road grader's engine. Mr. Moran conducted this test and noticed "a bunch of metal shavings in the transmission oil." RDO then asked him to send the fluid test materials to RDO for their own analysis. The road grader was also shipped to RDO's location in Rapid City as well. Notably, Mr. Moran did not test the road grader himself by driving it before shipping it to RDO. Mr. Moran did not do this because he feared the road grader would break down while it was being used in the field. He also testified that he relied on the expertise of RDO on what to do, and RDO recommended the road grader be shipped to its Rapid City location after he discovered metal shavings in the transmission oil.

Ultimately, RDO advised Todd County that the road grader was no longer operable due to metal shavings in the transmission and recommended its replacement. Mr. Moran testified that RDO told him the "metal shavings in the transmission indicated a lot of wear and tear and a bad transmission." RDO told Mr. Moran they could not say whether the metal shavings in the transmission were caused by the theft and subsequent trek undertaken by Defendant with the road grader through the reservation and into Nebraska or because of the age of the transmission. Todd County then bought a new road grader from RDO based on its recommendation that the one stolen by the Defendant was now inoperable.

The PSI determined the road grader's fair market value, at the time of the theft, was $70,000. Doc. 25 ¶ 74; Doc. 25-1 at 2. This was based on research conducted by the author of the PSI, who discovered a similar 2007 John Deere 772D road grader having been sold for $70,000. Doc. 25-1 at 2. Todd County also mitigated its damages by selling the old, non-working road grader for $39,500. Doc. 25 ¶ 74. For damages with respect to the road grader, the

Government seeks $30,500.00, the difference between the fair market value of the stolen road grader, $70,000, and the amount it received after selling the stolen road grader, $39,500.

Notably, Defendant does not object to being ordered to pay restitution for the cost of labor in towing the road grader for $800 and $1,700 for other towing related expenses. The Defendant also agrees he should pay $1,348.75 for damaging a fence when he drove the road grader through it. Thus, $3,848.75 in restitution is undisputed.

The Defendant objects, though, to paying $30,500 for the road grader. According to Defendant, it may be appropriate for him to pay a percentage of this amount, but it is not proper for him to pay the entire amount because the Government offered no evidence at the hearing that the road grader was inoperable because of the theft. Defendant seizes on testimony from Mr. Moran, where he states RDO advised him it could not say whether the metal shavings in the transmission were caused by the theft or by normal wear and tear on the transmission due to its age. Defendant also points out the road grader was driven onto a trailer before it was towed, thus apparently demonstrating it still worked after the theft. Finally, the Defendant also objects because he sought numerous documents from Todd County in discovery regarding the condition of the road grader that he never received. Without this documentation, the Defendant asserts he does not have the full picture of the condition of the road grader, and it is unfair for him to pay the entire amount of the loss.

The Government counters by arguing the road grader worked fine right up until the day of the theft, and thereafter RDO ordered a fluid test which demonstrated the road grader was inoperable due to metal shavings in the transmission. According to the Government, the only plausible explanation for the road grader's faulty transmission is the Defendant's theft and subsequent extended road trip, as it worked fine before the theft.

4

## C. Restitution Decision

"The amount of restitution 'must be based on the amount of loss actually caused by the defendant's offense.'" United States v. Yellow, 221 F. Supp. 3d 1142, 1145 (D.S.D. 2016) (emphasis removed) (quoting United States v. Petruk, 484 F.3d 1035, 1036 (8th Cir. 2007)); see also Frazier, 651 F.3d at 904 (Courts "cannot award the victim 'a windfall,' i.e., more in restitution than he actually lost." (quoting United States v. Boccagna, 450 F.3d 107, 117 (2d Cir. 2006)). "The Eighth Circuit has recognized the variety of methods available to a court under the MVRA in valuing property—fair market value, replacement cost, and foreclosure prices—but has suggested that fair market value is the most apt means to value property." Yellow, 221 F. Supp. 3d at 1146 (citing Frazier, 651 F.3d at 904). "Ultimately, it is for the district court to select the appropriate valuation method based on applicable circumstances." Id. (citing Frazier, 651 F.3d at 904). A district court's calculation of restitution is not held to standards of mathematical or scientific precision. United States v. Gushlak, 728 F.3d 184, 195 (2d Cir. 2013); United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013). For this reason, courts can "make reasonable estimates supported by the record." United States v. King, 93 F.4th 845, 851 (5th Cir. 2024); Gushlak, 728 F.3d at 195–96.

Here, the court believes $70,000 is an appropriate fair market value to place on the stolen road grader. This amount was derived after research conducted by the author of the PSI, which detected an identical road grader in similar condition being sold for that amount. Notably, the original price for the road grader was $205,667.21 when Todd County purchased it in 2007. Doc. 23-1. In the court's judgment, placing $70,000 as the fair market value for the road grader is fair, as it is based on research and takes into account depreciation and use of the machine. Further, Defendant offered no evidence contradicting the $70,000 fair market value assessment.

To avoid providing a windfall to Todd County, the Court believes it is also proper to deduct from the fair market value the amount Todd County received from the sale of the road grader. Thus, this leaves the damages that could be assessed against the Defendant for the road grader at $30,500 ($70,000 - $39,500 = $30,500).

The final question is to what amount, if any, the Defendant should pay of the $30,500 in damages suffered by Todd County for the loss of the road grader. After reviewing a transcript of the hearing and careful consideration, the Court is sympathetic to the Defendant's complaint that Todd County and the Government did not produce multiple documents that were requested about the condition of the road grader. Further, the Government and Todd County were unable to identify the individual at RDO who concluded the road grader was now inoperable after Defendant's theft. Further, Mr. Moran conceded in his testimony that RDO could not opine as to whether the metal shavings in the transmission were caused by the Defendant's theft and extended frolic with the road grader, or due to normal wear and tear.

At the same time, the Court heard undisputed testimony from Mr. Moran that the road grader worked fine up until the time the Defendant stole it. Further, the Court heard testimony that substantial metal shavings in the road grader's transmission oil were detected right after the theft, and RDO opined the road grader was no longer operable.

Defense counsel argued at the sentencing hearing that a new transmission for the stolen road grader would cost between $16,000 and $30,000, and Defendant "should owe a percentage of that, not the whole thing."

After careful consideration, the court believes Defendant should pay $15,250 in restitution for damage to the road grader. This is half the amount the Government is seeking. This amount takes into account Mr. Moran's testimony about the road grader working fine up until the time it was stolen by the Defendant. At the same time, it reduces the amount the Court

6

was contemplating ordering due to the arguments made by defense counsel. Upon further review and consideration, the Court is sympathetic to some of Defendant's arguments and is willing to reduce the amount owed for the road grader to $15,250. This amount constitutes a reasonable estimate supported by the record. King, 93 F.4th at 851; Gushlak, 728 F.3d at 195-96. "The Eighth Circuit has noted that it may be reasonable for the sentencing judge to simply 'split the difference' between two possible extremes." United States v. Fisher, 669 F. Supp. 2d 1013, 1026 (D.N.D. 2009) (quoting United States v. Radtke, 415 F.3d 826, 844 (8th Cir. 2005)). The Court will therefore order Defendant to pay restitution in the amount of $19,098.75 ($15,250 + $3,848.75). Accordingly, for good cause, it is

ORDERED that Defendant shall pay $19,098.75 in restitution. Payments shall be in the amount of $100 per month with the first payment due 90 days from the date of this order. Interest is waived. It is further

ORDERED that the United States Probation Office is directed to prepare an Amended Judgment setting forth restitution payable to Todd County.

DATED this 20th day of March, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

7